**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 23, 2026

# In the Court of Appeals of Georgia

A26A0393. IN THE INTEREST OF D. B., a child.

MARKLE, Judge.

The State appeals from the trial court's order granting D. B.'s motion to suppress evidence found on his cell phone, on the grounds that the search warrant lacked sufficient probable cause and was overbroad. For the reasons that follow, we affirm the trial court's order, concluding that the affidavit failed to establish the requisite nexus between the use of the cell phone and the alleged crime; therefore, the search warrant was not supported by probable cause.

"In reviewing the trial court's grant of the motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to

undisputed facts is subject to de novo review." *State v. Wilson*, 315 Ga. 613, 613 (884 SE2d 298) (2023) (citation modified).

The record reflects that, on April 1, 2024, law enforcement responded to a report of an auto theft in progress, and apprehended D. B., a juvenile, after a short chase. During a search incident to arrest, the police recovered D. B.'s cell phone. On April 30, 2024, D. B. pled guilty to the charges based on that incident.

Prior to the entry of the plea, a detective obtained a search warrant for the contents of D. B.'s cell phone. In his supporting affidavit, the detective stated the purpose of the search warrant was to identify two potential accomplices who had escaped arrest. He provided an account of the events leading to D. B.'s arrest, and averred:

> As based on my knowledge, training, and experience, during the commission of such crimes as entering autos and thefts, individuals operating in groups are known to communicate through their cellular devices. Whether its via calls to include FaceTime or some form of mobile web chat, text messages, or imagery to include sending each other photos of potential stolen items. These cellular devices are also known to connect to Bluetooth devices, in which a cellular device saves the data within its memory unless deleted.

The resulting warrant indicated that the detective had shown probable cause to authorize a search of "communication logs, telephone contacts, MMS and SMS text messages, digital media to include audio, video, and images, data related messages, and electronic messages and mailings" stored on D. B.'s phone "in violation of Georgia Law: OCGA 16-8-18 Entering Auto, and OCGA 16-8-2 Theft by Taking."

After D. B. had entered the plea to the initial charges, the detective reviewed the data extracted from the cell phone, and discovered photos linking D. B. to a March 22, 2024 breaking and entering of a police patrol car, and the theft of the officer's rifle and other weapons stored in the vehicle. Based on this evidence, D. B. was charged with entering an automobile, theft by taking, and possession of a handgun by a minor, giving rise to the case presently on appeal.

D. B. moved to suppress the cell phone evidence. After an evidentiary hearing, the trial court granted the motion, concluding that the warrant was not supported by probable cause and was overbroad. This appeal followed.

In related enumerations of error, the State contends that the trial court erred in granting D. B.'s motion to suppress because the search warrant was supported by

probable cause based on the facts asserted in the detective's affidavit, which was limited as to the type of crime — auto thefts.[1] We conclude that the search warrant was not supported by probable cause, and therefore the general search of D. B.'s cell phone was impermissible.

A search warrant will issue only based upon an oath or affirmation stating facts sufficient to show probable cause that a crime is being committed or has been committed. An affidavit supporting a search warrant generally should establish a connection between the defendant and the property to be searched and a link between the property and any criminal activity. In determining if a warrant is supported by probable cause, the magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit supporting the warrant there is a fair probability that contraband or evidence of a crime will be found in the place requested to be searched. A magistrate may draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant. On appellate review, our duty is to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. In passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention. The magistrate's

---

[1] The State's brief is deficient in that it fails to cite to any authority for the substance of its claims on appeal. See Court of Appeals Rule 25(d)(1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

determination of probable cause is entitled to substantial deference. Even doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper.

*State v. Ledbetter*, 318 Ga. 457, 469–70(2) (899 SE2d 222) (2024) (citation modified). See also *Perez v. State*, 316 Ga. 433, 440(3)(a) (888 SE2d 526) (2023); *Landers v. State*, 355 Ga. App. 69, 71 (842 SE2d 525) (2020) ("Before a warrant may issue, the issuing magistrate must have sufficient reasons to believe that a crime was committed, that the items sought are connected with the crime, and that the items sought will be found in the place to be searched.") (quotation marks omitted); U.S. Const. Amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); OCGA § 17-5-21(a).

The trial court found that the search warrant was invalid because the detective's affidavit failed to establish the requisite nexus between the cell phone and the alleged crime; therefore, the sole basis for probable cause was the detective's training and experience that there might be evidence of criminal activity on the phone, which is insufficient. We agree.

In *Riley v. California*, 573 US 373, 403(IV) (134 SCt 2473, 189 LE2d 430) (2014), the Supreme Court of the United States held that police must obtain a warrant to search the contents of a cell phone seized incident to an arrest. Although addressing warrantless searches, the Court laid out the novel privacy implications of modern cell phone technology on Fourth Amendment rights:

> First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.

Id. at 394–95(III)(B)(1).

Thus, while we are aware of the great deference that must be given to a magistrate's — or in this case, a juvenile court judge's — determination of probable cause, we are also mindful of the unique character of cell phone data, and the

6

consequent intricacies involved under Fourth Amendment jurisprudence. See *Riley*, 573 US at 393-396(III)(B) (explaining how cell phone data differs from physical records both quantitatively and qualitatively); *Wilson*, 315 Ga. at 621 (Pinson, J., concurring) (noting that *"Riley* addressed the nature of modern cell phones and how to view them for purposes of applying the Fourth Amendment").

In their concurrences in *Wilson*,[2] both Justices LaGrua and Pinson expressed concern of "a troublesome issue post-*Riley*, which is that many law enforcement officers believe that when a cell phone is discovered during the course of an investigation, probable cause simply exists to search it." 315 Ga. at 620 (LaGrua, J., concurring in judgment only); 315 Ga. at 628 ("[I]f this generic 'criminals use cell phones, too' logic is enough for probable cause to get a warrant to search a suspect's cell phone—it is hard to imagine a case in which police cannot get that warrant.") (Pinson, J., concurring).

Here, the recitation of the alleged crime in the detective's affidavit omits any facts attaching the use of a cell phone to the commission of the crime. See *Wilson*, 315 Ga. at 620 (LaGrua, J., concurring in judgment only) ("I remind the government that

---

[2] The majority opinion in *Wilson* focuses on the Fourth Amendment's particularity requirement, which is not at issue in the present case. 315 Ga. at 614-16.

the affidavit in support of the search warrant application should establish a link showing that the phone was used to facilitate, commit, or cover up the crime."); *Landers*, 355 Ga. App. at 72 (reversing trial court's denial of motion to suppress where application for search warrant failed to connect a seized portable storage device to alleged sex crimes). The affidavit "merely stated that a suspect had been arrested, a cell phone was discovered ..., and in the law enforcement officer's general knowledge, training, and experience [investigating auto thefts], he was aware that perpetrators commonly use their cell phones to communicate about crimes." *Wilson*, 315 Ga. at 620 (LaGrua, J., concurring in judgment only). This mere suspicion is insufficient to establish probable cause in this context. *Landers*, 355 Ga. App. at 72.

Accordingly, because the affidavit and application for the search warrant of D. B.'s cell phone failed to include any information linking it to the commission of the alleged crime, there was no substantial basis for a finding of probable cause. *Ledbetter*, 318 Ga. at 469(2); *Landers*, 355 Ga. App. at 71. Compare *Perez*, 316 Ga. at 445(3)(b), n. 11 (upholding finding of probable cause where application for search warrant included facts linking the cell phone to the alleged crime); *Glispie v. State*, 300 Ga. 128, 133(2) (793 SE2d 381) (2016) (Where police had recovered a large amount of

narcotics, cash, and two cell phones during search incident to arrest, "it was reasonable for the magistrate to infer that the cell phones in Glispie's possession at the time of his arrest were used as communicative devices with third parties for drug deals."); *Tallington v. State*, 376 Ga. App. 573, 580(2)(a) (920 SE2d 371) (2025) (probable cause to issue a search warrant for defendant's cell phone where victim had possession of defendant's cell phone and gave permission to law enforcement to inspect it, and defendant initially denied he owned the phone). We thus affirm the trial court's grant of the motion to suppress.[3]

*Judgment affirmed. Barnes, P. J., concurs. Hodges, J., concurs in judgment only.*

---

[3] The State contends that D. B. mistakenly relied on *State v. de la Paz*, 370 Ga. App. 853 (899 SE2d 447) (2024), to support his argument that the search warrant was invalid. However, the trial court's order makes no mention of *de la Paz*, and there is no indication that its decision turned on the outcome of that case. Although D. B. argues on appeal that *de la Paz* applies to the facts here, in light of the holding above, we need not address this argument.

A26A0393. IN THE INTEREST OF D. B., A CHILD

HODGES, Judge, concurring in judgment only.

I concur in judgment only to the majority's opinion because I do not agree with all that is said. I respectfully disagree that *State v. Wilson*, 315 Ga. 613 (884 SE2d 298) (2023), *Landers v. State*, 355 Ga. App. 69 (842 SE2d 525) (2020), or any other cases cited by the majority compel the result reached today. In my view, our recent opinion in *Civil v. State*, 375 Ga. App. 31 (912 SE2d 709) (2025), is the most on-point authority and suggests the trial court's order should be reversed.

However, I do not believe we can reach that result because the State's brief is wholly inadequate. Court of Appeals Rule 25(d)(1) requires appellants, like the State

here, to support their arguments by citation of authority. The Rule also cautions that an appellant's failure to do so may cause their enumeration to be deemed abandoned. Id. Indeed, "we have held that an argument is abandoned if it provides general citations to the 'most basic legal authority' without providing any legal authority or argument related to the specific facts of [the] case." *In the Interest of K. R.*, 367 Ga. App. 668, 677(2)(b) (888 SE2d 204) (2023); see also *Brittain v. State*, 329 Ga. App. 689, 704(4)(a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citation and punctuation omitted).

As observed by the majority, the State failed to cite any authority for the substance of its claims on appeal. This will not do. Instead of deciding the case based on the arguments presented by the parties, the State asks this Court to create arguments on its behalf. We should reject the State's invitation to do so because

> attempts to provide sua sponte appellate review of criminal appeals notwithstanding incomplete appellate filings, while laudable, do a disservice to the courts, the criminal defendant, and appellate counsel. The practice requires the appellate court to ignore jurisdictional and

2

procedural statutes and rules, and to change its role from disinterested decision-maker to appellate advocate reviewing a trial record for error.

*McDaniel v. State*, 367 Ga. App. 376, 380(f) (885 SE2d 245) (2023) (citation omitted).

By inexcusably disregarding this Court's Rules, the State has frustrated its ability to have the trial court's order reviewed. The State's failure to provide legal authority or any meaningful argument has made it impossible for the State to meet its burden of establishing error. As such, I would have simply found that the State has abandoned its enumerations on appeal, affirmed the trial court's order on that basis, and said nothing more.